LEONARD A. PIERCE AND JAMES M. PIERCE
TRUSTEES UNDER THE WILL OF CLARENCE H. PIERCE

*vs.*

MILDRED M. ADAMS.

Aroostook.  Opinion, March 14, 1941.

*Bernard Archibald,*
*Aaron A. Putnam,* for plaintiffs.
*Walter A. Cowan,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.; MURCHIE, J., DISSENTING.

WORSTER, J.   On exceptions. This is a real action to obtain possession of certain real estate in Smyrna in the County of Aroostook, consisting of the west half of lot numbered four, range four, and also a seven-rod strip off from the west side of the east half of said lot, excepting one acre in the southwest corner of lot 4. The cause was heard by the presiding justice without a jury, with right of exceptions reserved on questions of law.

Both parties claim title to said premises under Florence J. Adams.

The plaintiffs claim under a mortgage given by said Adams to Clarence H. Pierce, in 1922. After the death of Pierce, the mortgage was foreclosed by the executors of his will, by publication, in 1934, and the premises were conveyed by them to themselves as trustees, in 1939. The defendant claims under a deed to her from said Adams, dated April 18, 1935.

If the demanded premises were a part of the "homestead farm" of said Adams when the mortgage was given, and were covered thereby, then the plaintiffs are entitled to possession thereof; otherwise not.

The real estate is described in the mortgage as follows:

> "My homestead farm in said Smyrna, being the same conveyed to me by my husband, Charles B. Adams, late of said Smyrna by his deed dated March 14, 1914, recorded in Aroostook Registry of Deeds, at Houlton, in Vol. 273, Page 432, to which deed and the deeds and references therein referred to reference is hereby made for a more particular description of the premises hereby conveyed."

Whether the demanded premises were therein included, and covered thereby, must be determined by ascertaining the intention of the parties as expressed in said mortgage, in the light of the cir-

cumstances existing at the time it was made. *Perry* v. *Buswell*, 113 Me., 399, 94 A., 483.

At the time this mortgage was executed, and for a long time prior thereto, Florence J. Adams owned the whole of said lot 4, of which the demanded premises are a part, together with the adjacent fourteen-acre lot in the southwest corner of lot 3, excepting only a one-acre lot in the southwest corner of lot 4 with which we are not concerned. She acquired this property by separate deeds of several parcels, from different grantors. That part thereof constituting the demanded premises was formerly the farm of Isaac L. and Arabella M. Adams, and was conveyed by them to said Florence J. Adams in 1899, after her marriage to Charles B. Adams, who then, and until 1914, owned the adjoining farm. In that year, he conveyed that farm of his to his wife, by his deed described in said mortgage. Thereafterwards she carried on both farms, which she had acquired as aforesaid, as one farm, and was doing so at the time she executed this mortgage of "my homestead farm."

Undoubtedly, a mortgage of "my homestead farm" in a certain town, in the absence of any qualifying words, is sufficiently definite to cover the whole farm without further description, where its location and the land of which it is composed can be ascertained, although such a brief description of property may not be the best and safest form of conveyancing.

Leaving for later consideration the reference to the deed and the record thereof, there are no qualifying words in the instrument before us, to indicate any intention on the part of the grantor to convey in mortgage anything less than the whole of "my homestead farm." If the grantor had intended to mortgage only a part thereof, or so much thereof as was conveyed to her by her husband, she would naturally have so stated. Her failure to indicate her intention to convey only a part tends to show that she intended to convey the whole farm in mortgage, although she referred only to the deed she received from her husband.

That she did not always give all of the sources of her title to this combined property when called upon to state how she acquired it, is definitely shown by the record. In 1934, she made an application to the Federal Land Bank for a loan. That application was admitted in evidence without objection, and is before us. It appears from her

answers therein, and from the sketch of the property included, that she claimed that all of the premises acquired by her as aforesaid constituted but one parcel, and that all of said premises had been conveyed to her by said Charles B. Adams, by his deed described in the mortgage. No mention was made in the application of the deed to her of the demanded premises, although they were definitely included in the sketch or plan of the farm, and the acreage given in the application covered all of the property conveyed to her as aforesaid by both deeds.

But the defendant, nevertheless, contends that the expression "my homestead farm" in said mortgage was expressly qualified and limited by the clause "being the same conveyed to me by my husband, Charles B. Adams, . . . by his deed" dated and recorded as stated in the mortgage "to which deed . . . reference is hereby made for a more particular description of the premises hereby conveyed" so that all that was actually covered by the mortgage were the premises deeded to said Florence J. Adams by said Charles B. Adams as aforesaid.

Among the cases supporting the defendant's contention are *Barnard* v. *Martin*, 5 N. H., 536, and *Woodman* v. *Lane*, 7 N. H., 241, both of which were criticized by the court in *Melvin* v. *Proprietors*, 5 Metc., 15, 38 Am. Dec., 384.

The defendant, however, specially relies on *Allen* v. *Allen*, 14 Me., 387. In that case, the land was described in the deed as "my homestead farm, situated in said Jay, being lot No. 13, in range 4," and the court held that the title to only lot 13 passed thereby, although the grantor occupied other land adjacent thereto.

That case is unlike the case at bar. While the grantor in the *Allen* case purported to convey "my homestead farm" yet by designating the lot number, such "definite boundaries" were thereby pointed out in the deed that the property intended to be conveyed could "be located with entire precision." There the intention to limit the "homestead farm" to lot 13 was not left to a bare reference, but was disclosed on the very face of the deed itself.

Not so in the instant case. No "definite boundaries" of "my homestead farm" are pointed out on the face of this mortgage, so that the property covered thereby could "be located with entire precision," as was done in the deed of the *Allen* case.

Here it can only be ascertained that Charles B. Adams conveyed to Florence J. Adams less than the whole of the farm then occupied by her, by resorting to the deed or record to which reference was made.

Of course the description of real estate appearing in some existing instrument or record may be incorporated in a mortgage by reference. That is well settled. But where a mortgage or deed contains a specific and definite grant of land by such descriptive words as "my homestead farm," or by some specific name by which it is known, so that it can be located, the title to the whole described or named parcel will pass, in the absence of anything in the deed itself indicating a different intention, although less than the whole parcel was covered by the description in the instrument or record to which only a bare reference was made. *Keith* v. *Reynolds*, 3 Me., 393; *Drinkwater* v. *Sawyer*, 7 Me., 366; *Crosby* v. *Bradbury*, 20 Me., 61; *Andrews* v. *Pearson*, 68 Me., 19; *Jones* v. *Webster Woolen Company*, 85 Me., 210, 27 A., 105; *Meir-Nandorf* v. *Milner*, 34 Idaho, 396, 201 P., 720; *Lodge's Lessee* v. *Lee*, 6 Cranch, 237, 3 Law Ed., 210; *Trott* v. *Joselyn et ux.*, 222 Mich., 452, 192 N. W., 536.

A different intention is not usually to be inferred from a mere recital of the purpose of the grantor to convey the same premises which had been conveyed to her by a certain deed which did not include the whole property; for, as a general rule, a specific grant is neither enlarged nor limited by such a recital. *Smith* v. *Sweat*, 90 Me., 528, 38 A., 554. See, also, *Jones* v. *Webster Woolen Company*, supra.

And the same rule prevails even if a bare reference to such other deed was made for a particular description of the premises conveyed. *Crosby* v. *Bradbury*, supra.

In the case last cited, it was held that a deed of "a certain saw mill site in Levant village" with other property, "meaning to convey ... all the premises" in a certain other described deed, "reference thereto for a more particular description of said premises," will pass the mill and land thereunder, notwithstanding the grantor acquired by the deed to which reference was had, but a part of the premises upon which the mill was erected.

The opinions in *Allen* v. *Allen*, supra, and *Crosby* v. *Bradbury*, supra, were both written by Chief Justice Weston, and the distinc-

tion between the two cases is recognized in *Stewart* v. *Davis et al.*, 63 Me., 539, and in *Perry* v. *Buswell*, supra.

The instant case falls within the rule laid down in *Crosby* v. *Bradbury*, supra, and there is ample evidence in the record to sustain the finding of the presiding justice, that

> "There can be no doubt that Florence J. Adams understood that her entire farm was included in the Pierce mortgage . . . that the title to the entire lot Four passed by the Pierce mortgage in accordance with the intention of the parties at the time it was executed."

We find no merit in the exceptions, and the mandate is

*Exceptions overruled.*

## DISSENTING OPINION

MURCHIE, J. I regret that I am unable to concur in the opinion of the majority, that the mortgage under consideration, dated April 29, 1922, covered not only a tract of eighty-seven acres, which the mortgagor had acquired March 14, 1914, under the deed identified and referred to therein "for a more particular description of the premises" mortgaged, but also a tract of eighty-six acres, title to which had come to her, from a different grantor, December 27, 1899. The decision seems to me to run counter to a well-considered line of authorities which are founded on principles long established and generally accepted.

The basic rule, undoubtedly, as stated in the majority opinion, is that intention, at the time of the execution of an instrument of conveyance, is the controlling consideration in the construction thereof. *Allen* v. *Allen*, 14 Me., 387 ; *Field* v. *Huston*, 21 Me., 69 ; *Hathorn* v. *Hinds*, 69 Me., 326 ; *Ames* v. *Hilton*, 70 Me., 36 ; *Perry* v. *Buswell*, 113 Me., 399, 94 A., 483.

The issue hinges solely on the tests to be applied in determining intention, and, implicit therein, what consideration is to be given to an earlier conveyance, clearly identified in the words of description, and therein referred to, for a "more particular description of the premises" conveyed.

Numerous rules for determining intention are declared in the texts and sanctioned by decided cases. The bed-rock of all was expressed by Blackstone in the words that "construction be made upon the *entire* (italics mine) deed, and not merely upon disjointed parts of it." Volume 1, Book II, Par. 517, Jones Edition. The Massachusetts Court, in *Salisbury* v. *Andrews*, 19 Pick., 250, phrased the same rule,

"Every . . . word . . . shall be taken into consideration in ascertaining the meaning of the parties, whether words of grant, . . . or description . . . *every word* shall be presumed to have been used for some purpose, and *shall be deemed to have some force and effect*, if it can have." (All italics mine.)

Our own court, as late as 1915, *Perry* v. *Buswell*, supra, declared to the same effect,

". . . the expressed intention . . . gathered from all parts of the instrument, *giving each word its due force.* . . . It is the intention effectually expressed, not merely surmised." (Italics again mine.)

The words of description in the instant mortgage are quoted in full in the majority opinion. The exact construction there declared would have resulted if more than forty words of that description had been omitted, namely:

"by his deed dated March 14, 1914, recorded in Aroostook Registry of Deeds, at Houlton, in Vol. 273, Page 432, to which deed and the deeds and references therein referred to reference is hereby made for a more particular description of the premises hereby conveyed."

All these words, representing more than two-thirds, in bulk, of the language used to identify the property mortgaged, seem to be brushed aside as entirely meaningless surplusage.

The principal of incorporation by reference was early recognized in, and has long had the sanction of, this court. *Field* v. *Huston*, supra; *Marr* v. *Hobson*, 22 Me., 321; *Pierce* v. *Faunce*, 37 Me., 63; *Brown* v. *Holyoke*, 53 Me., 9. Under that principle, heretofore, a

recorded conveyance, properly identified and referred to in a later one, has been held, always, to be part and parcel of that later one, as fully, and as effectually, as if set forth at length therein. As a precursor to the formal promulgation of this principle, the court had previously declared, in *Drinkwater* v. *Sawyer*, 7 Me., 366, that,

> "A purchaser looks to the terms in which his purchase is described, rather than to the source from which his grantor derived title, *unless reference is made to a prior deed for a description of the premises*." (Italics mine.)

That the foundation of the principle lies deep at the roots of that very intention, which is the controlling consideration, is clear from language, phrased differently, but reiterating an identic meaning, in several of the cited cases:

> "From the whole deed . . . , it was the manifest expectation of the parties, that resort to other means of determining . . . the land embraced would be necessary, and we entertain no doubt, that it was the intention . . . , that all the land described in the deed referred to should be conveyed." *Marr* v. *Hobson*, supra, at 328.

> "there is no reference to any deed, and the want of any such reference by date, names of the parties to it, or otherwise, leaves a just inference that no such deeds were present or examined, and that no confidence was placed in the reference to the records to ascertain the extent of the estate conveyed." *Field* v. *Huston*, supra, at 72.

> "There is no declaration that the conveyance . . . was to be resorted to for the purpose of fixing boundaries or to make the description more certain and particular." *Hathorn* v. *Hinds*, supra, at 332.

> "when it appears that it was so intended . . ." *Perry* v. *Buswell*, supra, at 402.

The negation of Mr. Justice Shepley in *Field* v. *Huston*, supra, seems charged with meaning, and, while clearly having no authoritative effect, suggests strongly that reference to a deed, which is de-

scribed with accuracy, carries the clear inference that it was physically present and examined when the reference was made. The record in the instant case discloses that the description attempted to be incorporated conveyed a tract made up of a half-lot (less a seven-rod strip), and fourteen acres out of the adjoining lot, and that it gave the source of title of the then grantor.

That there are limitations on the efficacy of incorporation by reference is beyond doubt. Decided cases show clear distinctions between *general* and *specific* descriptions, and hold that those which are specific control those which are general. *Keith* v. *Reynolds*, 3 Me., 393; *Child* v. *Ficket*, 4 Me., 471; *Thorndike* v. *Richards*, 13 Me., 430; *Allen* v. *Allen*, supra; *Crosby* v. *Bradbury*, 20 Me., 61; *Hathorn* v. *Hinds*, supra; *Brunswick Savings Institution* v. *Crossman*, 76 Me., 577; *Jones* v. *Woolen Co.*, 85 Me., 210, 27 A., 105; *Brown* v. *Heard*, 85 Me., 294, 27 A., 185; *Smith* v. *Sweat*, 90 Me., 528, 38 A., 554; *Perry* v. *Buswell*, supra.

The majority opinion founds decision, perhaps equally, on the potency of a *specific* description, and on the binding force of a factual finding in the Trial Court, although the latter is referred to only in a single short phrase in the closing paragraph. It holds that the words "my homestead farm" constitute a "specific and definite grant", which renders futile any attempt to incorporate a description by reference, no matter how meticulous the care with which the instrument containing it is identified, or how positive the declaration of intent that it be referred to for descriptive purposes. It cites no precedent, either for giving a definite legal signification to the words "my homestead farm", or for enlarging the rule of the controlling force of specific descriptions so as to emasculate that of incorporation by reference. In *Andrews* v. *Pearson*, 68 Me., 19, one of seven cases cited to illustrate the controlling force of specific descriptions (and the only one which deals with "farm" property), the identical words here under consideration were followed by language locating, and reciting the acreages of, several parcels said to comprise it. One parcel was recited to contain "12½ acres", where in fact it contained twenty-five. The court, remarking that the farm was one of "ancient and well defined boundaries", which could hardly be claimed in the instant case, where the eighty-seven-acre tract and

the eighty-six-acre tract had been in common ownership less than nine years, declared,

> "No one can read the description . . . and doubt that it was the intention . . . that the whole farm should pass."

In the deed then under consideration there was no reference whatsoever to any earlier conveyance. There the issue was entirely between the descriptive words "my homestead farm" and an acreage recital, long recognized as one of the least important for determining intention. 8 A. J., 790, Par. 63 ; 16 A. J., 601, Par. 289.

Opposed to *Andrews* v. *Pearson*, supra, as to the *general* or *specific* nature of descriptive words such as "homestead farm", or specific names, by which property is known, "so that it can be located" (to use the words of the majority opinion), are authorities in our own court, and elsewhere. *Thorndike* v. *Richards*, supra ; *Allen* v. *Allen*, supra ; *Stewart* v. *Davis*, 63 Me., 539 ; *Shaw* v. *Bisbee*, 83 Me., 400, 22 A., 361 ; *Smith* v. *Sweat*, supra ; *Taylor* v. *Mixter*, 28 Mass., 341 ; and even *Perry* v. *Buswell*, supra, on which the majority so extensively relies. In that case the words "my homestead place", clearly comparable with the present "my homestead farm", were not only recognized as constituting merely a *general* description, but their lack of that controlling force which is carried by a *specific* description was emphasized by the statement,

> "It may be that the words 'my homestead place', or the reference, either, alone, ought not to overcome the limitation. . . . But the use of both . . . lends so much weight to . . . intention . . . , we think it . . . decisive."

The majority opinion distinguishes the case of *Allen* v. *Allen*, supra, from the instant one by a recital that the intention to limit a "homestead farm" to a named lot was disclosed, in that case, "on the very face of the deed itself" and "not left to a *bare* reference", To my mind not only is the word "bare" a misnomer to designate so explicit a reference as that before the court, but the recitals in the two instruments are so similar that the same law should govern the construction of both. In each case the party signing the instrument of conveyance owned a tract which could be described, properly, as a

homestead farm, yet a part thereof might be described in like manner with equal accuracy. In the early case the words "being lot thirteen in range four", following the words "my homestead farm", although no plan was identified or referred to for purposes of description, were held to restrict the conveyance to the smaller tract because the lot designation, ushered in by use of the word "being", disclosed an intention to restrict the operative effect of the general words to such part of the "homestead farm" as might be contained within limits thereafter to be determined by reference to a plan. In the present case the *same* descriptive words, followed in the *same* way by the same restrictive word "being", are in turn followed by a complete, definite, and accurate identification of a recorded conveyance, and an express declaration that the purpose of identification and reference is "for a more particular description" of the property intended to be covered by the general descriptive words. A quotation from the opinion in the earlier case will illustrate how nearly on all-fours the recitals in one are with the recitals in the other,

> "That there might be no mistake, as to what the homestead he conveyed included, he gave it definite boundaries. They were such, as can be located with entire precision. The land thus described, was his homestead; but it would seem, not the whole of it. The term unexplained, would be understood to mean the whole, but explained, the conveyance embraces only the homestead within the limits given, if any regard is to be paid to the intention of the grantor, which is too plainly expressed to be misunderstood."

Point is made in the majority opinion, phrased in language similar to that used in *Perry* v. *Buswell*, supra, which dealt with very dissimilar facts, that the absence of such qualifying words as "a part of", or "so much thereof", prior to the general descriptive words, "tends to show" an intent to convey "the whole farm". Like the words earlier quoted herein from Mr. Justice Shepley in *Field* v. *Huston*, supra, the words so adapted have no authoritative force. It may be noted further that they were used, not to restrict the force and effect of an incorporated reference, but to give added force and effect to the combined power of the words "my homestead farm" *and*

such a reference. The court there dealt with the restrictive effect of a *general* recital, ushering in the words of description, that the property conveyed was in a named town whereas the *whole* farm, all of which was described in the incorporated deed, was partly in an adjoining one. That the word "being", used to usher in a reference, has long been considered to imply a restriction limiting the effect of a description, even a specific one, by the bounds incorporated, was recognized by Chief Justice Weston in *Crosby* v. *Bradbury*, supra, where he said,

> "The reference contains no negative words, that the grantor conveyed only what Garland had in that deed conveyed to him; *although that would have been the fair implication*, if no discrepancy of description had been disclosed. . . ." (Italics mine.)

This case (*Crosby* v. *Bradbury*), cited in the majority opinion, remains to be considered. So far as I am aware, it is the only one heretofore decided in this court where a reference clearly made and definitely referred to "for a more particular description" has been declared ineffective *as against anything short of a metes and bounds description.* The descriptive words there used were "a certain saw mill site" and the limitation, asserted on the basis of an incorporated reference, would have cut out of the conveyance a part of the land under the mill. Earlier decisions in this court, and elsewhere, had already given to such words a definite signification in law which constituted them as the equivalent of a specific description (*Maddox* v. *Goddard*, 15 Me., 218; *Whitney* v. *Olney*, 3 Mason, 280), and the decision was that the reference "should not be permitted to restrict a description, so definite, tangible and perfect, as" found in the words "saw mill site".

The majority opinion notes that the mortgagor acquired title to the "several" parcels of which the entire farm was composed by "separate" deeds. The "several" parcels included half a particular lot (less a single acre), and seven acres adjoining off the other half of the same lot, which parcels made up the eighty-six-acre tract conveyed to her in 1899, and that other half (less the seven acres aforesaid), and fourteen acres off an adjacent lot, which parcels made up the eighty-seven-acre tract conveyed to her in 1914 and described in the deed attempted to be incorporated.

The alternative ground of the majority opinion lies in the established rule that where a case is heard without the intervention of a jury, factual findings of the justice below are final, if supported by evidence in the record. *Ayer* v. *Railway Co.*, 131 Me., 381, 163 A., 270, *and cases cited therein*. As to this ground, perhaps, it is enough to say that, as I read the cases, established principles leave here no loophole for a factual finding on evidence of supposed intent. Expressed intent was clear, that the property described was that eighty-seven-acre tract acquired in 1914.

In my earlier consideration of this cause, it had seemed to me that the exceptions might properly be overruled on the ground of their insufficiency. The essential recitals in the bill of exceptions are, that the defendant excepts to the "finding and judgment", that the "finding" is made a part of the bill, and that the defendant considers herself "aggrieved by the aforesaid finding and judgment". Here is no specification as to whether the basis of the claim is an implied ruling that determination of intent shall be based on collateral evidence, rather than on proof as to the property conveyed by the incorporated deed, or determination of the fact of intention without evidence. Here again is no specification of the particular question as to the interpretation of a written document which is requisite to bring that issue of construction before the court within the rule laid down in *American Sardine Co.* v. *Olsen*, 117 Me., 26, 102 A., 797. The majority of the court, however, has treated the bill of exceptions as if both issues were properly before us. Because of that fact, no attention is here paid to the question of procedure.

On the authority of our own decided cases, it seems to me that the action of the court below, in its failure to rule that the incorporated reference controlled the amount of property conveyed by a clear indication of the intention of the mortgagor in that regard, represents exceptionable error, and that the entry should be

*Exceptions sustained.*